**Clarence Fulton DAVIS, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 57184.**

Supreme Court of Missouri,
En Banc.

Oct. 8, 1973.

Henri J. Watson, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for movant-appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

BARDGETT, Judge.

Appellant was charged in the Circuit Court of Jackson County, Missouri, with driving a motor vehicle without the consent of the owner, a felony. He entered a plea of guilty to the charge on March 2, 1970, and on May 7, 1970, was sentenced to four years' imprisonment. On June 2, 1971, movant filed a post-conviction relief motion under Rules 27.25 and 27.26, V.A. M.R., seeking to withdraw his plea of guilty and have the judgment and sentence vacated. Counsel was appointed and an evidentiary hearing was held. The court

overruled the motion and movant appealed. The notice of appeal was filed prior to January 1, 1972. This court has jurisdiction. Art. 5, § 31, Mo.Const. 1945, as amended, V.A.M.S.

At the time of the plea of guilty movant was 17 years old, with a ninth grade education and an I.Q. of 79. He was represented by retained counsel. The record made on March 2, 1970, in connection with the plea of guilty is, in part, as follows:

"[DEFENSE COUNSEL]: The defendant desires to plead guilty, Your Honor, on this charge.

"THE COURT: If you will develop from him that he does so knowingly and voluntarily the plea will be accepted. [DEFENSE COUNSEL]: Yes, sir.

"THE COURT: Just go ahead and interrogate him.

"[DEFENSE COUNSEL]: Clarence, you are the defendant in this case, are you? THE DEFENDANT: Yes.

"[DEFENSE COUNSEL]: Now, will you tell the Court if you know what you are pleading guilty, to, pertaining to the automobile that was being driven by you? Will you explain to the Court how you got possession of the car? Speak up so that the Court can hear you.

"THE DEFENDANT: I was at home one night when a fellow came by and picked me up, Clifford Tunley.

"[DEFENSE COUNSEL]: Now, were you at home when he picked you up in the car?

"THE DEFENDANT: Yes. [DEFENSE COUNSEL]: Where did you go?

"THE DEFENDANT: Around to his house.

"[DEFENSE COUNSEL]: He can't hear you.

"THE DEFENDANT: We went to his house and stayed about 15 or 20 minutes.

[DEFENSE COUNSEL]: What address was that?

"THE DEFENDANT: 3327 Highland. [DEFENSE COUNSEL]: Then where did you go?

"THE DEFENDANT: He went and picked up two or three more boys and left them at his house and then came and picked me up, and we went to Columbia and was on our way there. We made a stop at the Holiday Inn, and he asked me if anyone else wanted to drive, so I drove. The car was in the parking lot.

"[DEFENSE COUNSEL]: Was the parking lot at the Holiday Inn at Noland and Independence and New 40 Highway? THE DEFENDANT: Yes, sir.

"[DEFENSE COUNSEL]: And had you been driving the car before you went to this? THE DEFENDANT: No.

"[DEFENSE COUNSEL]: And who was driving that car when you went into this Holiday Inn? THE DEFENDANT: Clifford Tunley.

"[DEFENSE COUNSEL]: And was that where you changed drivers?

"THE DEFENDANT: Yes, sir. [DEFENSE COUNSEL]: And what happened then?

"THE DEFENDANT: Well, as soon as I drove up to the lot, the officer got behind me and stopped me.

"[DEFENSE COUNSEL]: And then what happened?

"THE DEFENDANT: He told us to get out of the car, that we was under arrest for investigation of auto theft. He told everybody to get out of the car and he told us that we were all under arrest.

"[DEFENSE COUNSEL]: Did you all get out? THE DEFENDANT: Yes.

"[DEFENSE COUNSEL]: And you were under the wheel at the time?

"THE DEFENDANT: Yes, sir.

\* \* \* \* \* \*

"[DEFENSE COUNSEL]: And that was the story as it happened?

"THE DEFENDANT: Yes, sir.

"[DEFENSE COUNSEL]: And you didn't know anything about the car being stolen at the time? THE DEFENDANT: No, sir.

"THE COURT: Do you understand that when you appear here in court on this charge that you don't have to say anything at all as far as what you did, do you understand that? THE DEFENDANT: Yes sir.

"THE COURT: And you are voluntarily telling us what occurred?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you understand that you are entitled to have a trial if you want to? [Your attorney] would represent you at that trial, that you could witness for yourself and you could cross-examine, yourself or through [your attorney], the State's witnesses?

"THE DEFENDANT: Yes.

"THE COURT: And you understand what the range of punishment is for driving a motor vehicle without the consent of the owner?

"THE DEFENDANT: I don't know what the range is.

"THE COURT: It could be $1.00 to $100.00 fine, one day to one year in the County Jail, or two years to five years in the Department of Corrections. Now that I have told you that, does that make a difference in your willingness to enter a plea of guilty here today?

"THE DEFENDANT: I would still like to enter a plea of guilty.

"THE COURT: Very well. The Court finds that you do so knowingly and voluntarily, and therefore the plea is received."

The court ordered a presentence investigation and, on May 7, 1970, appellant was sentenced to four years' imprisonment. The record of the May 7, 1970, hearing contains the presentence investigation report. That report reflects that the appellant continued to assert that he did not know that the automobile he was driving was stolen, but rather that Tunley told him that it was Tunley's uncle's car. The movant said, "So I am guilty for driving the car without the owner's permission because I was led to believe that it was his uncle's car."

Several witnesses, including movant, testified at the 27.26 hearing. The gist of the testimony of all of them, except movant's trial attorney, was that movant's trial attorney told him that if he pled guilty he would get a parole. Movant's trial attorney testified that he did not promise him a parole nor did he threaten to withdraw if movant did not plead guilty; that he told movant he could have a trial before a jury; that movant could have an attorney even if he didn't want to follow the trial attorney's suggestions on the matter; that he could have a court-appointed attorney; that movant told him that he, movant, did not know that the car was stolen when he was arrested but that, in the opinion of the attorney, this did not constitute any defense; that he told movant he could get two to 20 years on the charge; that if he pled guilty he would get a better break than if he went before a jury.

Rule 25.04 provides, in part, that "[a] defendant may plead not guilty or guilty. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or pleads equivocally, or if the court refuses to accept a plea of guilty \* \* \* the court shall enter a plea of not guilty."

Appellant contends that the plea was not entered voluntarily with a full understand-

ing of the nature of the charge, and therefore he should be permitted to withdraw his plea of guilty and the judgment and sentence should be vacated.

The record of the plea proceeding on March 2, 1970, on its face, demonstrates that movant affirmatively told the court, as he had previously told his attorney and subsequently told the officer making the pre-sentence investigation, that he did not know that the car was stolen. At the sentencing proceeding on May 7, 1970, the court read into the record the pre-sentence investigation. Again, the record reflects that movant's position was that he did not know the car was stolen, but believed that he was guilty of the charged offense even though he did not know that the car was stolen; as movant stated, "So I am guilty for driving the car without the owner's permission because I was led to believe that it was his [Tunley's] uncle's car." There was no evidence at the Rule 27.26 hearing that movant, at the time he pled guilty, knew the car was stolen at the time he was driving it. The evidence continued to be to the contrary.

 An essential element of an offense under § 560.175(1), RSMo 1969, V.A.M.S., is that the defendant intentionally operate the automobile without the consent of the owner, State v. McLarty, 414 S.W.2d 315 (Mo.1967); and if a person operates a car with the honest belief that he has permission to do so from the owner or from a person whom he honestly believes to be in lawful possession of the car, the statute is not violated. State v. Tate, 436 S.W.2d 716 (Mo.1969). Although it is not essential for conviction that the defendant know the car is stolen, the issue of criminal intent in the context of this case is found in the testimony relating to whether the defendant believed Tunley's uncle owned the car and permitted Tunley to use it as opposed to whether the defendant knew that such was not the case but rather that the car had been stolen by Tunley and therefore was being operated without the owner's consent.

In this case the court was affirmatively on notice at the guilty plea proceedings that the movant denied the existence of the essential element of criminal intent, that is, he believed he had lawful permission to drive the car. Nevertheless, there was no effort made to advise the defendant that if this was true, then, under the law, he would not be guilty of the offense charged. Nor was there any effort to determine why movant was pleading guilty to a charge which, under the law, he was not guilty of committing if his statement concerning lack of knowledge was true.

The State relies principally upon North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), for the proposition that a person can validly plead guilty to a charge and at the same time claim not to have committed the offense. Without exploring all of the facets of *Alford,* a vital distinction between *Alford* and the instant case is immediately apparent. In *Alford,* the sentencing court, after learning that Alford was undertaking to plead guilty and at the same time protesting his innocence, went further into the matter and developed in the record the reason why Alford desired to plead guilty although claiming to be innocent. The court heard witnesses who summarized the evidence the state had and which would be introduced at trial. Alford told the court that he was pleading guilty because he faced the threat of the death penalty if he did not do so. Alford was aware of strong evidence against him and the full basis for Alford's desire to plead guilty was known to the court and Alford clearly understood the nature of the charge.

Pleading guilty to an offense that one is not guilty of committing is certainly the exception and not the rule.

*Alford* is not a refuge available to insulate pleas of guilty from attack when the record shows the plea not to have been entered voluntarily *and* with an understanding of the charge.

In the instant case it was not developed from movant any reason for his desire to

plead guilty while at the same time stating a fact, which, if true, or if found to be true by a court or jury, would relieve movant of criminal responsibility on this charge.

This is of particular significance in this post-conviction relief case because the denial of the necessary element occurred in open court during the plea proceedings. The denial did not come to the fore at some later date as an afterthought put forward to undo a plea of guilty which on its face had been regularly and properly received. In short, this contradiction affirmatively appeared in the guilty plea itself and is totally without explanation.

The real question in this case is: What did movant plead guilty to? The name of the charge was "driving an automobile without the consent of the owner." It is required, however, that a defendant understand the nature of the charge. Rule 25.04. Here the record itself shows that movant did not understand the nature of the charge because although pleading guilty to the named charge he affirmatively asserted a denial of an essential element thereof *at the plea proceedings.*

Burrell v. State, 461 S.W.2d 738 (Mo. 1971), presented a somewhat analogous situation. There was no transcript of the plea proceedings in *Burrell.* The record at the Rule 27.26 hearing demonstrated that Burrell thought he was pleading guilty to something less than rape, as did the court and the prosecutor, but the charge was rape. This court set aside the plea because Burrell did not understand he was pleading guilty to rape.

Here the plea record on its face shows that movant thought it was a crime to be driving a car which, in fact, was being operated without the owner's consent but which he believed was with the owner's consent. Movant did not, according to the plea record, understand the nature of the charge at the time he pled guilty.

In this case the plea proceedings affirmatively demonstrate that movant did not

then understand the nature of the charge and the proceedings were not otherwise in substantial compliance with Rule 25.04. The post-conviction hearing did not remedy this defect but rather confirmed the fact that movant did not understand the nature of the charge when he entered his plea of guilty. In these circumstances Rule 27.25 requires that movant be permitted to withdraw his plea of guilty and plead anew.

The judgment of the circuit court denying movant's motion to withdraw his guilty plea and to vacate judgment and sentence is reversed. The plea of guilty and the judgment and sentence entered thereon are vacated. The cause is remanded to the Circuit Court of Jackson County, Missouri, with direction to permit movant to plead anew to the charge.

All of the Judges concur.